IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JOHN EARL JOHNSON,

                              Plaintiff,

        vs.                                           Civil Action No.
                                                      9:04-CV-0057 (DNH/DEP)

SERGEANT GUIFFRIE[1], *et al.*,

                              Defendants.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

JOHN EARL JOHNSON, *pro se*
Lewisburg, PA

FOR DEFENDANTS:

OFFICE OF ATTORNEY GENERAL      ROGER KINSEY, ESQ.
For Defendant C.P.C.R. Council   Assistant Attorney General
Department of Law
The Capitol
Albany, NY 12224

DONOHUE, SABO LAW FIRM           KENNETH G. VARLEY, ESQ.
For Defendant Guiffrie
24 Aviation Road
Albany, NY 12212-5056

_____

        1        Defendant Joseph A. Guiffrie, who is alleged to be a corrections
sergeant at the Montgomery County Jail, was mistakenly named by the defendant in
his complaint as Sergeant Guiffery.  I will accordingly ask that the clerk's office adjust
its records to reflect the correct spelling of that defendant's name.

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff John Earl Johnson, who is now a federal prison inmate, has

commenced this action pursuant to 42 U.S.C. § 1983 alleging violation of

his civil rights during the time he was confined, apparently as a federal

pretrial detainee, within the Montgomery County Jail ("MCJ").  Johnson,

who is a practicing Muslim, claims that jail officials at MCJ interfered with

the free exercise of his religion by depriving him of a diet which complied

with his genuinely held beliefs.  Plaintiff also asserts claims against the

Citizens' Policy and Complaint Review Council ("CPCR Council"), which

operates under the aegis of the New York State Commission of

Correction, alleging that body's failure to intercede on his behalf.

Currently pending before the court are cross-motions seeking

partially dispositive relief.  The CPCR Council initiated the motion process

by moving for an order dismissing plaintiff's complaint against that agency,

based principally upon its claim of entitlement to the protections afforded

under the Eleventh Amendment.[2]  Plaintiff has since cross-moved for the

_____

        2       In its motion the Council also asserts, as an additional basis for dismissal
of plaintiff's claims against it,  the lack of personal involvement on the part of any
individual board members in the alleged constitutional deprivation.  *See* Defendants'

entry of summary judgment in his favor on the question of liability in connection with his religious exercise claims against all of the named defendants.  For the reasons set forth below, I recommend that the Council's dismissal motion be granted, with leave granted for plaintiff to replead, and that plaintiff's cross-motion for summary judgment be denied based upon the existence of genuinely disputed, triable fact issues.

I.      BACKGROUND

        At the times relevant to his complaint the plaintiff, who subscribes to Islamic religious tenets, was a federal pretrial detainee within the custody of the United States Marshal Service ("USMS"), and incarcerated within the MCJ pursuant to an apparent arrangement between the USMS and officials operating that facility for the housing of federal prisoners awaiting trial.  Complaint (Dkt. No. 1) Parties ¶ 3.  On June 13, 2003, following his transfer into that facility, plaintiff informed jail officials of the requirement

---

Memorandum (Dkt. No. 10) at 4-5.  In the event that one or more Council members were sued individually, I would not necessarily be prepared to recommend their dismissal from the action for lack of personal involvement at this early juncture since one could envision a setting in which those individual Council members could be deemed to have had personal involvement in the constitutional deprivations alleged based upon plaintiff's complaint to that body, coupled with its failure to rectify an alleged, potentially ongoing constitutional deprivation.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  It is for this reason that I am recommending that dismissal of plaintiff's claims against the Council be ordered with leave to replead to name Council members individually, by name, if desired.

that he be provided a diet congruent with his religious beliefs.  *Id.* Facts ¶¶ 1, 2; Johnson Aff. (Dkt. No. 30) ¶ 1.  In response to his discussions with prison officials, plaintiff was informed that in view of his stated religion he would be provided with a diet lacking in pork, but that beyond that his request for a meat-free diet would not be honored.  Johnson Aff. (Dkt. No. 30) ¶ 2.  Plaintiff's request was formalized on June 16, 2003 through plaintiff's submission of a written, special diet request form asking "that he not be served any meats such as 'Beef, chicken and turkey etc.' because of his religious affiliation."  Johnson Aff. (Dkt. No. 30) ¶ 1.  That request was denied on June 18, 2003 by defendant Guiffrie, who responded that the MCJ is a "no pork facility" which does "not honor vegatarian [sic] diets."  *Id.* ¶ 2.

Plaintiff filed a formal grievance regarding the denial of his special diet request on June 18, 2003.  Complaint (Dkt. No. 1) Facts ¶ 13; Johnson Aff. (Dkt. No. 30) ¶ 3.  That grievance was denied by the facility's grievance coordinator on June 25, 2003, based upon a finding that the facility's policy to reasonably accommodate prisoners' religious dietary beliefs had been followed.  Complaint (Dkt. No. 1) Facts ¶ 14; Johnson Aff. (Dkt. No. 30) ¶ 5.  That grievance denial was upheld on appeal to

4

John F. Pecora, the facility's chief administrative officer, on June 27,
2003.  Complaint (Dkt. No. 1) Facts ¶ 18; Johnson Aff. (Dkt. No. 30) ¶ 7.

Plaintiff appealed the matter further to the Council on or about June
27, 2003.  Complaint (Dkt. No. 1) Facts ¶ 19; Johnson Aff. (Dkt. No. 30) ¶
8.  While plaintiff, who was transferred out of the Montgomery County Jail
on July 29, 2003, *see* Complaint (Dkt. No. 1) Facts ¶ 20, maintains that he
received no response with respect to that appeal, defendants assert that
the Council voted on November 19, 2003 to deny the grievance, and
notified both the Montgomery County Sheriff and the plaintiff of that
determination by letter dated November 25, 2003 from Daniel B. Reardon,
Commissioner and Chair of the New York Commission of Correction.
Guiffrie Aff. (Dkt. No. 33) ¶ 10.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on January 16, 2004.  Dkt. No. 1.  In
his complaint plaintiff has named, as defendants, the CPCR Council, as
well as John F. Pecora, the Administrator of the Montgomery County Jail,
and Sergeant Guiffrie, a corrections employee at the facility.  *Id.*  Plaintiff's
complaint asserts constitutional claims based upon the alleged
interference with the free exercise of his religious beliefs, procedural and

substantive due process violations, and the denial of equal protection.  *Id.*

On July 15, 2004, in lieu of answering, the CPCR Council moved seeking dismissal of plaintiff's claims against it for failure to state a cause of action upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. Nos. 10, 11.  In its motion, the Council alleges that as an arm of the State, it is entitled to the protections offered by the Eleventh Amendment of the United States Constitution.  *Id.* Plaintiff has since responded in opposition to that motion.  Dkt. No. 28.

On October 29, 2004 plaintiff cross-moved for summary judgment seeking a finding of liability, as a matter of law, on his various constitutional claims as against defendant Guiffrie.[3]  Dkt. Nos. 29-31. Papers submitted on behalf of defendant Guiffrie in opposition to plaintiff's cross-motion, arguing that genuine issues of material fact exist and preclude the entry of summary judgment, were filed on November 15, 2004.  Dkt. No. 33.  Plaintiff has since replied to those opposition papers, in further support of his motion.  Dkt. No. 35.  The parties' cross-motions, which are now ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. §

---

[3]      Defendant Pecora has neither been served, nor has he appeared in the action.  *See* Dkt. Nos. 13, 16.

636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Defendant CPCR Council's Motion To Dismiss

        1.   Rule 12(b)(6) Standard

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citing, *inter alia*, *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)).  In deciding a 12(b)(6) motion, the court must accept the material facts alleged in the complaint as true.  *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).

When determining whether a complaint states a cause of action, a court should afford great liberality to *pro se* litigants.  *Davis*, 320 F.3d at 350 (citation omitted).  In fact, the Second Circuit has held that a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

7

2.    Sufficiency Of Plaintiff's Claim Against The Council

Among the defendants named in plaintiff's complaint in this action is the CPCR Council, as a body; the complaint lacks either reference to any of the members of that body by name, or an indication that its members are being sued as individuals, as distinct from in their official capacities. Complaint (Dkt. No. 1) Parties ¶ 6.  In its dismissal motion, the Council maintains that as a state entity, it is entitled to Eleventh Amendment immunity from suit.

The CPCR Council is an outgrowth of a statutory mandate, and functions under the auspices of the State Commission of Correction.  N.Y. Correction Law § 42.  The Council is comprised of members appointed by the Governor, with advice and consent of the New York State Senate, and is an agency of the executive branch of the State's government.  N.Y. Correction Law §§ 41, 42.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought.  *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978).  This absolute immunity which states enjoy under the Eleventh Amendment extends to both state agencies and state officials sued in

their official capacities, when the essence of the claim involved is one against a state as the real party in interest.  *Richards v. State of New York Appellate Division, Second Department*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984), (citing *Pugh* and *Cory v. White,* 457 U.S. 85, 89-91 102 S. Ct. 2325, 2328-2329 (1982)).  "To the extent that a state official is sued for damages in his official capacity . . . the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."[4]  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105 (1985).

Because plaintiff's section 1983 claims against the CPCR Council are in reality claims against the State of New York, they exemplify those against which the Eleventh Amendment protects, and are therefore subject to dismissal.  *Daisernia v. State of New York,* 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.).

B.   Plaintiff's Summary Judgment Motion

1.   Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of

---

4   By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983.  *See Hafer*, 502 U.S. at 30-31, 112 S. Ct. at 364-65.

Civil Procedure.  Under that provision, summary judgment is warranted

when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits . . . show that there is no

genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505,

2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight*

*Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).

When summary judgment is sought, the moving party bears an initial

burden of demonstrating that there is no genuine dispute of material fact

to be decided with respect to any essential element of the claim in issue;

the failure to meet this burden warrants denial of the motion.  *Anderson*,

477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Ins.*, 391 F.3d at 83.

In the event this initial burden is met, the opposing party must show,

through affidavits or otherwise, that there is a material issue of fact for

trial.[5]  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553;

---

5    A material fact is genuinely in dispute "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at
248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when
defending against summary judgment motions, they must establish more than merely

*Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

## 2.   Analysis Of Plaintiff's Motion For Summary Judgment

Plaintiff's complaint asserts six separate causes of action: the first alleges deprivation of his First Amendment free religious exercise rights; counts two and three allege procedural due process violations; counts four and five allege substantive due process violations; and plaintiff's sixth cause of action alleges a denial of equal protection. It is unclear whether plaintiff is seeking partial summary judgment on all six claims, or instead

---

"metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

only with regard to his free exercise and procedural due process claims.

As will more thoroughly be discussed below, this uncertainty underscores

plaintiff's failure to carry his burden of demonstrating the lack of any

genuinely disputed fact which is material to any element of the claims

alleged – a failure which proves fatal to Johnson's summary judgment

motion.[6]

a)    Plaintiff's Free Exercise Claim

Central to plaintiff's free exercise claim is his contention that while,

generally speaking, Islamic precepts prohibit only the eating of pork and

pork byproducts, as well as other meats not resulting from religiously

overseen and proper slaughter, he apparently subscribes to a particular,

more restrictive point of view which also precludes his consumption of

chicken, beef, or turkey.  Johnson Aff. (Dkt. No. 30) ¶ 1; Plaintiff's Motion

(Dkt. No. 31) Exh. A.  In accordance with his personal beliefs, plaintiff

---

6    Plaintiff's reply memorandum, in which he argues that it is the
defendants' burden to establish the existence of genuine issues of material fact,
reflects a fundamental misunderstanding of the governing summary judgment
standard on his part.  *See* Reply Memorandum (Dkt. No. 35) at 4.  While it is true that
a non-moving party will ultimately bear that burden, that obligation arises only after the
moving party has fulfilled its initial charge of demonstrating the lack of any such fact
issue.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Insurance*, 391
F.3d at 83.

submitted a special diet request to Montgomery County Jail officials identifying himself as a member of the Islam faith who has practiced that religion for seven years, and requested a diet consisting of fish and vegetables.  Plaintiff's Motion (Dkt. No. 31) Exh. A.  Both that request and subsequent grievances addressing the issue were denied by prison officials on the basis that the facility's "no pork" diet was compliant with basic Islamic principles, as outlined within a reference manual compiled and maintained by John F. Pecora, the former administrator of the MCJ. *See* Hutchinson Aff. (Dkt. No. 33) ¶ 5, Exh. A.  Plaintiff maintains that the denial of his diet request improperly restricted the free exercise of his religious beliefs.

The First Amendment to the United States Constitution guarantees the right to free exercise of religion.[7]  U.S. Const. amend. I.  That clause, as is true with regard to the First Amendment in general, applies to prison inmates, subject to appropriate limiting factors.  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003).  Thus, for example, under accepted free exercise jurisprudence inmates are guaranteed the right to participate in

---

7       That amendment provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.

congregate religious services under most circumstances.  *See*, *e.g.*,
*Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (citing cases).

The right of exercise by prison inmates of their religious beliefs,
however, is not absolute or unbridled, and is subject to valid penological
concerns, including those relating to institutional security.  *O'Lone v.
Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 2404 (1987);
*Salahuddin*, 993 F.2d at 308.  A determination of whether the refusal to
permit attendance at a religious service, for example, hinges upon an
inmate's First Amendment free exercise right is "one of reasonableness,
taking into account whether the particular [act] affecting [the] right . . . is
'reasonably related to legitimate penological interests.'"  *Benjamin v.
Coughlin*, 905 F.2d 571, 574 (2d Cir.) (quoting *Turner v. Safley*, 482 U.S.
78, 89, 107 S. Ct. 2254, 2261 (1987)), *cert. denied*, 498 U.S. 951, 111 S.
Ct. 372 (1990).

Unquestionably, the reach of the First Amendment's free exercise
clause extends beyond mere attendance at congregate religious services
into other aspects of prison life including, pertinently, that of an inmate's
diet.  Ordinarily the Eighth Amendment establishes as a constitutional
minimum the requirement that inmates be provided with nutritionally

14

adequate meals; if this threshold is met, prison officials retain considerable discretion in determining dietary constituents.  *Word v. Croce,* 169 F. Supp.2d 219, 226 (S.D.N.Y. 2001).  Even though this minimum requirement may otherwise be satisfied, however, an inmate's diet that does not meet the requirements of his or her particular religious circumstances may abridge that person's First Amendment rights.  *Id.*  A free exercise claim arising from such a denial underscores the frequent tension between constitutional protections to be afforded to prison inmates and "the interests of prison officials charged with complex duties arising from administration of the penal system."  *Benjamin*, 904 F.2d at 574 (citation omitted).

Analysis of plaintiff's free exercise claim requires examination of three issues, including 1) the sincerity of his held religious beliefs; 2) whether defendants' actions represented a substantial burden on those beliefs; and 3) if so, whether the restrictions imposed were reasonably related to legitimate penological interests.[8]  *Farid v. Smith*, 850 F.2d 917,

---

    8    Noting in its decision in *Ford v. McGinnis* a circuit split over whether prisoners must demonstrate that a burden on their religious exercise is substantial in order to establish a free exercise claim, the Second Circuit declined to resolve the issue, instead assuming continued applicability of the substantial burden test.  352 F.3d 582, 592-93 (2d Cir. 2003).

926 (2d Cir. 1988).  As the moving party seeking the entry of summary

judgment on his free exercise claim, plaintiff bears the initial burden of

establishing the lack of any genuinely disputed fact issue on any of these

three questions.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4;

*Security Ins.*, 391 F.3d at 83.  This is a burden which he has not carried.

The sincerity of plaintiff's religious beliefs that he should not be

required to eat any meats, other than fish, is nowhere addressed in

plaintiff's initial moving papers.[9]  Plaintiff's reply papers, rather than

clarifying the issue, in fact obfuscate the record as it relates to this critical

element.  In those reply papers, plaintiff alleges that the defendants bear

the burden of proving that the food made available to him was consistent

with his religious beliefs – religious beliefs which he nowhere describes

other than to baldly assert that he subscribes to the Islamic religion – and

fails even to allege that his genuinely held religious beliefs require that he

not be served any non-pork meat, regardless of whether it is the result of

---

9      The Second Circuit had occasion to address this element – the
bonafides of a plaintiff's sincerely held religious beliefs – in the context of a religious
dietary restriction request made by an inmate, in *Ford v. McGinnis*, 352 F.3d 582 (2d
Cir. 2003).  While noting in *Ford* the difficulties inherent in casting upon the judiciary
the task of probing the extent of a plaintiff's legitimately held beliefs, the court
observed that "[a]n individual claiming violation of free exercise rights need only
demonstrate that the beliefs professed are 'sincerely held' and in the individual's 'own
scheme of things, religious.'"  *Ford*, 352 F.3d at 588 (citations omitted).

Islamic-compliant slaughter and preparation.

Plaintiff has also failed to establish the lack of any fact issue regarding the substantiality of the burden on his free exercise rights resulting from MCJ staff not providing him with his requested diet.  To be sure, the fact alone that adherence to a fish and vegetable diet may not be mandated by the Islam faith does not negate a finding of a substantial burden on plaintiff's free exercise rights in not providing him with such a food regimen.  *Ford*, 352 F.3d at 593.  As the Second Circuit sagely observed in *Ford*, "[t]o confine the protection of the First Amendment to only those religious practices that are mandatory would necessarily lead [the courts] down the unnavigable road of attempting to resolve intra-faith disputes over religious law and doctrine."  *Id.* (citing *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 716, 101 S. Ct. 1425, 1431 (1981)).  The Second Circuit therefore has eschewed adoption of "a definition of substantial burden that would require claimants to show that they either have been prevented from doing something their religion says they must, or compelled to do something their religion forbids."  352 F.3d at 593.  Instead, the court noted that "[t]he relevant question in determining whether [plaintiff's] religious beliefs were substantially

17

burdened is whether participation in [the requested feast] is considered central or important to [plaintiff's] practice of Islam." *Id.* at 593-94.

On the basis of the record before me, I find the existence of issues of fact as to whether, and if so to what degree, defendant's actions constituted a substantial burden upon plaintiff's free exercise of his religious beliefs.  In any event, plaintiff has failed to properly support his motion by demonstrating the lack of any disputed issue regarding the burden cast on his sincerely held religious beliefs as a result of the diet which he received at the facility.

Plaintiff has similarly failed to establish the lack of any legitimate justification for denying him the requested diet, as was his initial burden in moving for summary judgment.  Analysis of this factor requires the court to weigh certain relevant considerations, including 1) whether there is a valid and rational connection between the regulation and the legitimate government interest justifying it; 2) consideration of other available means of the prisoner exercising his or her religious rights; 3) the consequences of requiring accommodation of the right on prison staff and allocation of prison resources generally; and 4) whether available, low cost alternatives exist which would accommodate the right without compromising legitimate

18

penological concerns.  *Ford*, 352 F.3d at 595 (citing *Turner*, 482 U.S. at 89-91, 107 S. Ct. at 2262).  Recognizing that prison officials are entitled to considerable deference in their judgment regarding penological and security concerns, the Second Circuit has "made clear that once prison officials put forward a legitimate penological interest to justify an infringement upon a prisoner's religious free exercise, the burden remains with the prisoner to 'show that these [penological] concerns were irrational.'"  *Ford*, 352 F.3d at 595-96 (quoting *Fromer v. Scully,* 874 F.2d 69, 74 (2d Cir. 1989)).  Since plaintiff has failed to establish the lack of any fact issue regarding potential penological concerns warranting denial of plaintiff's application for a fish and vegetable only diet, he has failed to sustain the initial burden associated with his motion on this question as well.

For these reasons I recommend that plaintiff's summary judgment motion, seeking a finding of liability on his free exercise claim as a matter of law, be denied.

b)      Procedural Due Process

In his complaint plaintiff also asserts that the denial of his dietary request, without affording him a hearing, violated his procedural due

process rights.  Plaintiff seeks summary judgment on his procedural due process claims.

"In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law . . . the proper inquiry is whether those conditions amount to punishment of the detainee."  *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1872 (1979).  The key inquiry is whether the restriction is excessive or punitive – if the restriction is an incident of another legitimate, nonpunitive government purpose or reasonably related to a legitimate government objective, no due process interest is implicated.[10]  *See Bell*, 441 U.S. at 538-39, 99 S. Ct. at 1873-74.  Since plaintiff has failed to establish that the alleged failure to provide him with a diet suitable to his religious beliefs, as distinct from meals which satisfy

---

[10]      Courts have held that the traditional procedural due process test governing prison conditions set forth in *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 2300 (1995) – whether the deprivation in question would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" – does not apply to pretrial detainees, given that a pretrial detainee's expectations of the ordinary incidents of life are vastly different than those of a convicted inmate.  *Brims v. Tracy*, No. 93 CIV. 3233, 1996 WL 153696, at *3 (S.D.N.Y. Apr. 3, 1996).  In any event, it is doubtful that plaintiff would be able to establish a claim under *Sandin*.  *See*, *e.g.*, *McEachin v. McGuinnis*, 357 F.3d 197, 200-01 (2d Cir. 2004) (affirming without discussion the district court's finding that plaintiff failed to show that failure to provide a Muslim diet was an "atypical and significant hardship" under *Sandin*).

the minimum requirements imposed by the Eighth Amendment, was excessive or for a punitive purpose, he is therefore not entitled to summary judgment on his procedural due process claims.

c)   <u>Substantive Due Process</u>

Plaintiff also asserts two substantive due process claims under the Fourteenth Amendment.  It is well established, however, that where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."  *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989); *see also Albright v. Oliver*, 510 U.S. 266, 271-72, 114 S. Ct. 807, 812 (1994) (citing *Graham*).  Given that plaintiff's due process claims are more appropriately governed by the Free Exercise Clause of the First Amendment, under which Johnson has already alleged distinct claims, he is therefore unable to state a claim under the Substantive Due Process Clause of the Fourteenth Amendment.  *See*, *e.g.*, *Omar v. Casterline*, 288 F.Supp.2d 775, 781 (W.D. La. 2003).

d)   <u>Equal Protection</u>

21

In his last cause of action, plaintiff also claims violation of his equal protection rights. Neither his complaint nor his papers, however, are particularly enlightening concerning the classification and difference in treatment which, he alleges, was the result of a deprivation of equal protection.

The Equal Protection Clause of the Fourteenth Amendment requires that state actors treat similarly situated people alike. *See Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985). To prove an equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).

Johnson's non-specific, conclusory allegations are fatal to his equal protection claim. *Jackson v. Mann*, 196 F.3d 316, 321 (2d Cir. 1999) (inmate's religious equal protection claim failed when he presented no evidence that he was treated differently from similarly situated members of other religions). Because plaintiff has therefore not established the lack of any genuinely disputed fact issue regarding his equal protection claim, I recommend against the grant of summary judgment on this cause of action as well.

IV.   SUMMARY AND RECOMMENDATION

Plaintiff's claim against the CPCR Council, an agency of the State, is subject to dismissal, as a matter of law, as barred by virtue of the Eleventh Amendment.  While plaintiff may be able to maintain claims against members of the Council, as individuals, alleging their participation in the constitutional violations alleged, he has not asserted such claims in this action.  Plaintiff's claims against the Council should therefore be dismissed, with leave to replead.  Plaintiff's motion for summary judgment on his direct claims is subject to denial, based upon his failure to establish the lack of genuinely disputed material facts with respect to those claims.

Based upon the foregoing it is hereby

RECOMMENDED that the motion by defendant CPCR Council to dismiss plaintiff's claims against that entity (Dkt. No. 10) be GRANTED, and plaintiff's complaint be DISMISSED as against that defendant, with leave to replead to assert claims against its members, individually; and it is further

RECOMMENDED that plaintiff's motion for summary judgment finding liability on his various claims against defendant Sergeant Guiffrie (Dkt. No. 29) be DENIED.

23

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

Dated:     May 17, 2005
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\ISSUES\civil rights\First Amendment\religion\johnson.wpd

24