IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JOHN EARL JOHNSON,

                                        Plaintiff,

          v.                                                    Civil Action No.
                                                                9:04-CV-0057 (DNH/DEP)
SERGEANT GUIFFERE,[1] *et al.*,

                                        Defendants.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

JOHN EARL JOHNSON, *pro se*

FOR DEFENDANTS:

DONOHUE, SABO, VARLEY &          KENNETH G. VARLEY, ESQ.
  HUTTNER, LLP                   FRED J. HUTCHISON, ESQ.
24 Aviation Road, Suite 205
P.O. Box 15056
Albany, NY 12212-5056


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

_____

          [1]     Defendant Joseph A. Guiffere, who is alleged to have been a corrections
sergeant at the Montgomery County Jail during the times relevant to plaintiff's claims,
was mistakenly named by the plaintiff in his complaint as Sergeant Guiffery.  In my
earlier report and recommendation, dated May 17, 2005, I directed the clerk to revise
his records to reflect that defendant's name as Sergeant Guiffrie.  *See* Dkt. No. 48.
Because it now appears that the proper spelling of this defendant's name is Guiffere, I
will once again ask the clerk's office to adjust its records accordingly.

<u>REPORT AND RECOMMENDATION</u>

Plaintiff John Earl Johnson, who is now a federal prison inmate, has commenced this action pursuant to 42 U.S.C. § 1983 alleging violation of his constitutional rights during a one and one-half month period while confined as a federal detainee within the Montgomery County Jail ("MCJ"). Johnson, a practicing Muslim, claims that jail officials at the MCJ violated his constitutional rights by depriving him of a diet consistent with his religious beliefs.

Currently pending before the court is a motion by Sergeant Guiffere, the lone remaining defendant appearing in the action, seeking the entry of summary judgment dismissing plaintiff's claims against him. Defendant's motion is predicated upon his assertion that the policy in place at the MCJ, requiring only that Islamic inmates be provided a "no pork" diet but that requests for vegetarian or other religious alternative meals be denied, is constitutional under existing law. Defendant Guiffere further contends that if a constitutional violation occurred, he is nonetheless entitled to qualified immunity from suit based upon the legal uncertainties surrounding plaintiff's claims. For the reasons set forth below, I recommend that Guiffere's summary judgment motion be granted and that plaintiff's claims

2

against him be dismissed on the basis of qualified immunity.

I.    BACKGROUND

At the times relevant to his complaint the plaintiff, who subscribes to strict Islamic religious tenets, was a federal detainee held in the custody of the United States Marshals Service, and incarcerated within the MCJ pursuant to an apparent arrangement between that agency and officials operating the facility for the housing of federal prisoners awaiting trial and/or sentencing.  Complaint (Dkt. No. 1) ¶ 3, Facts ¶¶ 1, 20; *see also* Defendant's Motion for Summary Judgment (Dkt. No. 62) Exh. B, at 37. On June 13, 2003, following his transfer into the MCJ, plaintiff informed jail officials that his religion required he be fed meals consistent with his Islamic beliefs, though without providing elaboration regarding the diet being requested.[2]  Complaint (Dkt. No. 1), Facts ¶¶ 1, 2; Johnson Aff.

---

[2]    Plaintiff apparently adheres to a strict Islamic diet, which has been described by one court as follows:

> [p]racticing Muslims eat food that is Halal, which means allowed or lawful.  The opposite of Halal is Haram, which means prohibited or unlawful.  A Halal diet includes fruits, vegetables and all things from the sea.  The flesh of herbivorous animals, such as cows, lambs, chickens and turkeys, is Halal if it is slaughtered with the appropriate prayer and in the appropriate manner. . . . Haram items include pork and all pork by-products, carrion and the flesh of carnivorous animals, such as cat, dog, rat, lion, tiger, and eagle. . . . Halal does not require separate preparation and serving facilities after Halal meat is slaughtered according

(Dkt. No. 30) ¶ 1.  After an ensuing series of discussions with various prison officials at the MCJ regarding the issue, plaintiff formalized his dietary request on June 16, 2003 through the submission of a special diet request form asking that he not be served any meats "such as beef, chicken, turkey etc." because of his religious affiliation.  Johnson Aff. (Dkt. No. 30) ¶¶ 1-2; Complaint (Dkt. No. 1), Facts ¶¶ 2-9; *see also* Guiffere Aff. (Dkt. No. 33-4) Exh. B.  That request was denied on June 18, 2003 by defendant Guiffere, who responded that the MCJ is a "no pork facility" which does "not honor vegetarian diets."  Guiffere Aff. (Dkt. No. 33-4) Exh. B; Complaint (Dkt. No. 1), Facts ¶ 12.

Plaintiff filed a formal grievance regarding the denial of his special dietary request on June 18, 2003.  Complaint (Dkt. No. 1), Facts ¶ 13; Johnson Aff. (Dkt. No. 30) ¶ 3.  That grievance was denied by the facility's grievance coordinator, Candus M. Kwiatkowski, on June 25, 2003, based upon her finding that the facility's policy of reasonably accommodating

─────────────────────

to ritual.

*Abdul-Malik v. Goord*, No. 96 CIV. 1021, 1997 WL 83402, at *1 (S.D.N.Y. Feb. 27, 1997); *see also Smith v. Nuttal,* No. 04-CV-0200, 2007 WL 837111, at *1 n.3 (W.D.N.Y. Mar. 14, 2007).  During his deposition, plaintiff explained the four mandatory characteristics of properly prepared Halal food at length by quoting a translation of the relevant sections of the Koran (Quran). *See* Defendant's Motion for Summary Judgment (Dkt. No. 62) Exh. B, at 18-22.

prisoners' religious dietary beliefs had been followed.  Complaint (Dkt. No. 1), Facts ¶ 14; Johnson Aff. (Dkt. No. 30) ¶ 5.  That grievance denial was later upheld on appeal to John F. Pecora, the facility's chief administrative officer, on June 27, 2003.  Complaint (Dkt. No. 1), Facts ¶ 19; Johnson Aff. (Dkt. No. 30) ¶ 7.

Plaintiff appealed the matter further to the Citizens' Policy and Complaint Review Council (the "CPCR Council") on or about June 27, 2003.  Complaint (Dkt. No. 1), Facts ¶ 19; Johnson Aff. (Dkt. No. 30) ¶ 8. While plaintiff, who was transferred out of the MCJ on July 29, 2003, *see* Complaint (Dkt. No. 1), Facts ¶ 20, maintains that he never received a response with respect to that appeal, defendants assert that the CPCR Council voted on November 19, 2003 to deny the grievance, and notified both the Montgomery County Sheriff and the plaintiff of that determination by letter dated November 25, 2003 from Daniel B. Reardon, Commissioner and Chair of the New York Commission of Correction. Guiffere Aff. (Dkt. No. 33) ¶ 10.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on January 16, 2004.  Complaint (Dkt. No. 1).  In his complaint, plaintiff named as defendants the CPCR

Council as an entity, as well as John F. Pecora, the Administrator of the

MCJ, and Sergeant Guiffere, a corrections employee at the facility.[3]  *Id.*

Plaintiff's complaint asserts various constitutional claims stemming from

the denial of his dietary request, including interference with the free

exercise of his religious beliefs, procedural and substantive due process

violations, and the denial of equal protection, and seeks recovery of

compensatory and punitive damages.  *Id.*

On July 15, 2004, in lieu of answering, the CPCR Council moved

seeking dismissal of plaintiff's claims against it for failure to state a cause

of action upon which relief may be granted, pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure.  Dkt. Nos. 10, 11.  In a report dated

May 17, 2005, I recommended that all claims against the CPCR Council

as an entity be dismissed as barred by absolute immunity under the

Eleventh Amendment, with leave for plaintiff to replead to assert claims

---

[3]      Defendant Pecora has neither been served, nor has he appeared in the
action.  *See* Dkt. Nos. 13, 16, 22.  In light of plaintiff's failure to serve him within the
allotted 120 days under Rule 4(m) of the Federal Rules of Civil Procedure, and in the
absence of anything which would constitute good cause to extend that period, plaintiff's
claims against defendant Pecora are subject to dismissal, without prejudice.  Fed. R.
Civ. P. 4(m); *see Shuster v. Nassau County,* No. 96 Civ. 3635, 1999 WL 9847, at *1
(S.D.N.Y. Jan. 11, 1999) (Rule 4(m) authorizes dismissal where no service within 120
days after filing of the complaint); *Michelson v. Merrill Lynch, Pierce, Fenner & Smith,
Inc.*, 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (citing *Mississippi Publ'g Corp. v.
Murphree*, 326 U.S. 438, 444-45, 66 S. Ct. 242, 245-46 (1946)) (court lacks jurisdiction
until defendants properly served with summons and complaint).

against individual members of the council, and further urged the court to deny plaintiff's cross-motion for summary judgment on the merits of his claims.[4]  Dkt. No. 48.  Those recommendations were adopted by order issued by U.S. District Judge David N. Hurd on December 7, 2005.  Dkt. No. 51.

On October 31, 2006 defendant Guiffere, the only other defendant served in the action, filed a summary judgment motion with the court, arguing both that the denial of plaintiff's dietary request did not violate a constitutional right because it was reasonably related to a legitimate penological interest, and that in any event he is protected from suit under the doctrine of qualified immunity.  Dkt. No. 62.  Plaintiff responded in opposition to Guiffere's motion by submission filed on January 22, 2007, Dkt. No. 67, and defendant Guiffere has since countered with the filing on February 1, 2007 of a reply memorandum in response to plaintiff's opposition.  Dkt. No. 69.  Defendant Guiffere's summary judgment motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See*

---

[4]      Plaintiff has not availed himself of this limited opportunity to replead.

7

*also* Fed. R. Civ. P. 72(b).

III.   <u>DISCUSSION</u>

    A.   <u>Summary Judgment Standard</u>

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special

8

latitude when defending against summary judgment motions, they must

establish more than mere "metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106

S. Ct. 1348, 1356 (1986) (citations omitted); *but see Vital v. Interfaith Med.*

*Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to

consider whether *pro se* plaintiff understood nature of summary judgment

process).

When summary judgment is sought, the moving party bears an initial

burden of demonstrating that there is no genuine dispute of material fact

to be decided with respect to any essential element of the claim in issue;

the failure to meet this burden warrants denial of the motion.  *Anderson*,

477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.

In the event this initial burden is met, the opposing party must show,

through affidavits or otherwise, that there is a material issue of fact for

trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553;

*Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve

any ambiguities, and draw all inferences from the facts, in a light most

favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v.*

9

*Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is

inappropriate where "review of the record reveals sufficient evidence for a

rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of*

*Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also*

*Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is

appropriate only when "there can be but one reasonable conclusion as to

the verdict").

> B.    First Amendment Free Exercise Claim[5]

In his summary judgment motion, Guiffere initially argues that

plaintiff's First Amendment rights were not abridged while being held in the

---

[5]    Although his complaint does not contain such a cause of action, plaintiff's factual allegations could support a claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), which provides, in pertinent part, that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of a burden on that person – 1) is in furtherance of a compelling governmental interest; and 2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  Because the principles which inform analysis of plaintiff's free exercise claim are similar to those applicable to his potential RLUIPA cause of action, although the two claims are analyzed under somewhat different frameworks, *see Salahuddin v. Goord,* 467 F.3d 263, 274 (2d Cir. 2006), and my finding of defendant's entitlement to qualified immunity applies equally to this potential claim, it is unnecessary to separately determine whether plaintiff's *pro se* complaint should be liberally construed as asserting such a cause of action.

MCJ, since New York State guidelines for religious dietary needs and the

facility's local practices, providing that a "pork-free" meal satisfies the

constitutional dietary requirements for Muslim inmates, are reasonably

related to legitimate penological interests.  Defendant's Motion for

Summary Judgment (Dkt. No. 62-6) at 2.  Plaintiff counters that the

budgetary concerns implicitly advanced by the defendant in defense of the

relevant dietary practices at the MCJ do not support their position, since

all that he asked was that his meals consist only of fish and vegetables,

not that prison officials incur the expense of preparing Halal meals.

The First Amendment to the United States Constitution guarantees

the right to the free exercise of religion.[6]  *Cutter v. Wilkinson*, 544 U.S.

709, 719, 125 S. Ct. 2113, 2020 (2005).  That clause, as is true with

regard to the First Amendment generally, applies to prison inmates,

subject to appropriate limiting factors.  *Ford v. McGinnis*, 352 F.3d 582,

588 (2d Cir. 2003) ("Prisoners have long been understood to retain some

measure of the constitutional protection afforded by the First

Amendment's Free Exercise Clause.") (citing *Pell v. Procunier,* 417 U.S.

---

[6]        That amendment provides, in pertinent part, that "Congress shall make
no law respecting an establishment of religion, or prohibiting the free exercise thereof."
U.S. Const. amend. I.

817, 822, 94 S. Ct. 2800, 2804 (1974)).  Thus, for example, under

accepted free exercise jurisprudence inmates are guaranteed the right to

participate in congregate religious services under most circumstances.

*See*, *e.g.*, *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (citing

cases).

      The right of prison inmates to exercise their religious beliefs,

however, is not absolute or unbridled, and is subject to valid penological

concerns, including those relating to institutional security.  *O'Lone v.*

*Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 2404 (1987);

*Salahuddin*, 993 F.2d at 308.  A determination of whether the refusal to

permit attendance at a religious service, for example, hinges upon the

balancing of an inmate's First Amendment free exercise right, against

institutional needs of officials tasked with the increasingly daunting task of

operating prison facilities; that determination is "one of reasonableness,

taking into account whether the particular [act] affecting [the] constitutional

right . . . is 'reasonably related to legitimate penological interests.'"

*Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.) (quoting *Turner v.*

*Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987)), *cert. denied*, 498

U.S. 951, 111 S. Ct. 372 (1990).

Undeniably, the reach of the First Amendment's free exercise clause extends beyond mere attendance at congregate religious services into other aspects of prison life including, pertinently, that of an inmate's diet and participation in religious meals. *McEachin v. McGuinnis,* 357 F.3d 197, 204-05 (2d Cir. 2004); *Ford,* 352 F.3d at 597.  Ordinarily the Eighth Amendment establishes as a constitutional minimum the requirement that inmates be provided with nutritionally adequate meals; provided this threshold is met, prison officials retain considerable discretion in determining dietary constituents.  *Word v. Croce,* 169 F. Supp. 2d 219, 226 (S.D.N.Y. 2001).  This requirement, however, is augmented by the First Amendment's free exercise clause, which is broad enough to include an inmate's "clearly established" right "to a diet consistent with his or her religious scruples."  *Ford*, 352 F.3d at 597; *see also Bass v. Coughlin*, 976 F.2d 98, 99 (2d Cir. 1992).  "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights."  *McEachin,* 357 F.3d at 203.  A free exercise claim arising from such a denial brings into focus the tension between the right of prison inmates to freely enjoy and exercise their religious beliefs on the one hand, and the necessity of

13

prison officials to further legitimate penological interests on the other hand.
*See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir. 1990).

Examination of plaintiff's free exercise claim entails application of a three-part, burden shifting framework. *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988). A party asserting a free exercise claim bears the initial burden of establishing that the disputed conduct infringes on his or her sincerely held religious beliefs.[7] *Salahuddin v. Goord,* 467 F.3d 263, 274-75 (2d Cir. 2006); *King v. Bennett,* No. 02-CV-349, 2007 WL 1017102, at *4 (W.D.N.Y. Mar. 30, 2007). Importantly, in evaluating this factor the court must be wary of "'question[ing] the centrality of particular beliefs or practices to a faith, or a validity of particular litigants' interpretations of those creeds[,]'" *McEachin,* 357 F.3d at 201 (quoting *Hernandez v. Comm'r of Internal Revenue,* 490 U.S. 680, 699, 109 S. Ct. 2136, 2148-49 (1989)), and instead may only consider whether the particular plaintiff

---

[7]      Noting in its decision in *Ford v. McGinnis* a circuit split over whether prisoners must demonstrate that a burden on their religious exercise is substantial in order to establish a free exercise claim, the Second Circuit declined to resolve the issue, instead assuming continued applicability of the substantial burden test. 352 F.3d 582, 592-93 (2d Cir. 2003). Recent cases from this and other courts suggest that the Second Circuit resolved this split in its decision in *Salahuddin v. Goord,* 467 F.3d 263 (2d Cir. 2006) by subscribing to the substantial burden test. *See, e.g., Livingston v. Griffin,* No. 04-CV-00607, 2007 WL 1500382, at *15 (N.D.N.Y. May 21, 2007) (Singleton, J.); *King v. Bennett,* No. 02-CV-349, 2007 WL 1017102, at *4 (W.D.N.Y. Mar. 30, 2007). While harboring some doubt that the Second Circuit has in fact laid the matter to rest, I find it unnecessary to take a stance regarding this issue.

holds a belief which is religious in nature. *Ford,* 352 F.3d at 590; *King,*

2007 WL 1017102, at *4. Once a plaintiff has made this showing, the

burden then shifts to the defendant to identify a legitimate penological

purpose justifying the decision under scrutiny.[8] *Salahuddin*, 467 F.3d at

274-75; *Livingston v. Griffen,* No. 04-CV-00607, 2007 WL 1500382, at *15

(W.D.N.Y. May 21, 2007). In the event such a penological interest is

articulated, its reasonableness is then subject to analysis under the test

set out by the Supreme Court in *Turner v. Safley,* 482 U.S. 78, 107 S. Ct.

2254 (1987). *Giano v. Senkowski,* 54 F.3d 1050, 1054 (2d Cir. 1995);

*Livingston,* 2007 WL 1500382, at *15.

    Under *Turner,* the court must determine "whether the governmental

objective underlying the regulations at issue is legitimate and neutral, and

[whether] the regulations are rationally related to that objective."

*Thornburgh v. Abbott*, 490 U.S. 401, 414, 109 S. Ct. 1874, 1882 (1989).

The court then asks whether the inmate is afforded adequate alternative

means for exercising the right in question. *Id.* at 417, 109 S. Ct. at 1884.

Lastly, the court must examine "the impact that accommodation of the

---

[8]    While this framework is particularly well-suited for analysis of an agency wide or facility policy or practice affecting inmates generally, it applies with equal force to individual decisions such as that involved in this case, which impacts only a single inmate. *Salahuddin,* 467 F.3d at 274, n.4.

asserted constitutional right will have on others (guards and inmates) in the prison." *Id.* at 418, 109 S. Ct. 1884.  Decisions rendered since *Turner* have clarified that when applying this test, a court should examine "the existence of alternative means of facilitating exercise of the right that have only a *de minimis* adverse effect on valid penological interests." *Smith v. Nuttal,* No. 04-CV-0200, 2007 WL837111, at *5 (W.D.N.Y. Mar. 14, 2007) (citing *Salahuddin,* 467 F. 3d at 274).

In his motion, defendant does not question the sincerity of plaintiff's Islamic religious beliefs.  Plaintiff maintains that by providing him with meals containing meat other than pork, defendants have interfered with free exercise of his religion, the beliefs associated with which require him to observe a vegetarian diet – with the exception of fish, which he is permitted to eat.  While plaintiff offers nothing, aside from his naked assertions in this regard, as evidence that his sincerely held religious beliefs require such a dietary accommodation, the Second Circuit has encouraged "courts [to] resist the dangerous temptation to try to judge the significance of particular devotional obligations to an observant practitioner of faith."[9]  *McEachin,* 357 F.3d at 201.  Accordingly, the

---

[9]     The Second Circuit had occasion to address this element – the bonafides of a plaintiff's sincerely held religious beliefs – in the context of a religious dietary

plaintiff has satisfied his burden at step one of the inquiry.

It would ordinarily be incumbent at this juncture for the defendant to articulate palpably legitimate penological concerns to justify his refusal to provide the plaintiff with a vegetarian-plus-fish diet.  Typically, defendants in similar cases offer up the financial burden associated with affording inmates particular diets, including those involving preparation and serving of Halal meals.  *See, e.g., Williams v. Morton,* 343 F.3d 212, 217-18 (3d Cir. 2003); *Abdul-Malik v. Goord*, No. 96 CIV. 1021, 1997 WL 83402, at *4 (S.D.N.Y. Feb. 27, 1997).  With the articulation of such a justification, the focus would then return to the plaintiff, under the governing test, to establish that the policy is not reasonably related to legitimate penological interests.  *Ford*, 352 F.3d at 595-96.  Such an inquiry is particularly fact-laden, and generally ill-suited for resolution on motion for summary judgment.  *See generally Marria v. Broaddus*, 200 F. Supp. 2d 280, 297 (S.D.N.Y. 2002) (holding that fact issues existed as to whether DOCS' ban on literature and assembly of religious group was reasonably related to

_____

restriction request made by an inmate in *Ford v. McGinnis*, 352 F.3d 582 (2d Cir. 2003).  While noting the difficulties inherent in casting upon the judiciary the task of probing the extent of a plaintiff's legitimately held beliefs, the court observed that "[a]n individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are 'sincerely held' and in the individual's 'own scheme of things, religious.'"  *Id.* at 588 (citations omitted).

legitimate penological interests); *Show v. Patterson*, 955 F. Supp. 182, 190-91 (S.D.N.Y. 1997) (finding fact issues precluding summary judgment regarding whether strip search of Muslim inmates was reasonably related to legitimate penological interests).

In this instance the defendant has not offered any justification for his refusal to provide the plaintiff with the requested, vegetarian-plus-fish diet, the reasonableness of which could then be examined under *Turner*, instead arguing only his belief that plaintiff's non-pork diet should satisfy the requirements of mainstream Islamic religious tenets.  Since this represents little more than an invitation for the court to examine the bonafides of plaintiff's religious beliefs – an invitation which, the Second Circuit has counseled, should be firmly resisted – I find defendant's failure to offer justification for his denial of plaintiff's dieting request to be fatal to his motion, and that accordingly he is not entitled to summary judgment in connection with the merits of plaintiff's First Amendment free exercise claim.

### C.    Equal Protection

In addition to raising concerns under the free exercise clause of the First Amendment, plaintiff's complaint asserts a cause of action under the

18

equal protection clause of the Fourteenth Amendment.  The essence of that claim, however, is not well-defined in plaintiff's complaint, and his response in opposition to defendant's summary judgment motion fails to illuminate the claim.

The equal protection clause directs state actors to treat similarly situated people alike.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985).  To prove a violation of the equal protection clause, a plaintiff must demonstrate that he or she was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class.  *See Giano*, 54 F.3d at 1057 (citing, *inter alia*, *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767 (1987)).  The plaintiff must also show that the disparity in treatment "cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225, 121 S.Ct. 1475, 1477 (2001)) (internal quotation marks omitted).

It may be that plaintiff asserts an equal protection violation stemming

from the failure of prison officials to provide him with a diet consistent with his religious beliefs, while members of other religions are accommodated. In such a case plaintiff's equal protection claim is properly analyzed under the framework articulated by the Supreme Court in *Turner*.  *Smith*, 2007 WL 837111, at *5.

As is the case with regard to plaintiff's First Amendment claim, defendant has offered little of value to assist in determining whether it can be said, as a matter of law, that plaintiff's dietary request could not be accommodated consistent with legitimate penological concerns, and that the disparate treatment afforded to plaintiff, based upon his religious beliefs, thus did not abridge his rights to equal protection under the Fourteenth Amendment.  Accordingly, defendant Guiffere is not entitled to summary judgment at this juncture with regard to the merits of plaintiff's equal protection claim.

D.    Procedural Due Process[10]

_____

[10]    Plaintiff's complaint also alleges deprivation of substantive due process. Because plaintiff's complaint adequately alleges a violation of the First Amendment free exercise clause and the denial of equal protection as guaranteed by the Fourteenth Amendment, there is no need to resort to the more generic substantive due process provision for an analysis of those claims.  *See Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) ("[W]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process.").  In any event, it cannot be said that plaintiff's allegations arise to a level sufficient to offend notions of substantive

In his complaint plaintiff also asserts a claim for deprivation of his procedural due process rights.  Plaintiff's procedural due process claim contains two elements.

The first component of that claim derives from plaintiff's contention that in denying his request for a vegetarian-plus-fish diet, prison officials at the MCJ failed to follow their own internal regulations.  This element of plaintiff's due process claim is easily discounted.  It is well-established that no due process claims arise from the failure of prison officials to follow internal prison regulations.  *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) (citing *Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001)).

The second portion of plaintiff's due process claim stems from the failure of prison officials to provide a hearing before denying his request for a religious meal.  To successfully state a claim under 42 U.S.C. § 1983 for denial of due process, a plaintiff must show that he or she both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient procedural safeguards.  *See Tellier v.*

_____

due process.  *See id.* (noting alternatively that plaintiff's substantive due process claim must fail because alleged actions of defendants were not sufficiently shocking to create substantive due process violation).

21

*Fields,* 260 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes v.*

*Squillance*, 143 F.3d 653, 658 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S.

Ct. 246 (1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).

   In his papers plaintiff has cited no provision under which New York

has created a liberty interest guarantying prisoners meals including only

vegetables and fish, as requested by him.  Consequently, in order to

prevail on his due process claim plaintiff must establish that the denial of

his request in that regard imposed upon him "atypical and significant

hardship" in relation to the ordinary incidents of prison life.  *Sandin v.*

*Conner*, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 2300 (1995); *see also*

*McEachin,* 357 F.3d at 202-03; *Tellier,* 280 F.3d at 80; *Hynes*, 143 F.3d at

658.  Because plaintiff's complaint, even when most generously

construed, fails to contain any such allegation, his procedural due process

claim is subject to dismissal as a matter of law.

   E.    Qualified Immunity

   In addition to seeking dismissal of plaintiff's claims on the merits,

defendant now presses qualified immunity as an alternative basis for

dismissal of plaintiff's claims against him.

   Qualified immunity shields government officials performing

discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (citations omitted). Accordingly, governmental officials sued for damages "are entitled to qualified immunity if 1) their actions did not violate clearly established law, or 2) it was objectively reasonable for them to believe that their actions did not violate such law."  *Warren v. Keane,* 196 F.3d 330, 332 (2d Cir. 1999) (citing *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir. 1996)); *see also Zellner v. Summerlin*, __ F.3d __, 2007 WL 2067932, at *20-21 (2d Cir. July 20, 2007); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007).  The law of qualified immunity seeks to strike a balance between overexposure by government officials to suits for violations based upon abstract rights and an unduly narrow view which would insulate them from liability in connection with virtually all discretionary decisions.  *Locurto v. Safir*, 264 F.3d 154, 162-63 (2d Cir. 2001); *Warren*, 196 F.3d at 332.  As the Second Circuit has observed,

> [q]ualified immunity serves important interests in
> our political system, chief among them to ensure
> that damages suits do not unduly inhibit officials in
> the discharge of their duties by saddling individual

> officers with personal monetary liability and
> harassing litigation.

*Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal

quotations omitted) (citing, *inter alia, Bivens v. Six Unknown Named*

*Agents of the Fed. Bureau of Narcotics*, 456 F.2d 1339, 1348 (2d Cir.

1972)).

Analysis of a claim of qualified immunity entails a three step inquiry.

*Harhay v. Town of Ellington Bd. of Educ.,* 323 F.3d 206, 211 (2d Cir.

2003).  As a threshold matter, it must first be determined whether, based

upon the facts alleged, plaintiff has facially established a constitutional

violation.  *Id.*  If the answer to this inquiry is in the affirmative, the court

must then turn its focus to whether the right in issue was clearly

established at the time of the alleged violation.  *Id.* (citing *Saucier v. Katz*,

533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001)); *see also Poe v.*

*Leonard*, 282 F.3d 123, 132-33 (2d Cir. 2002).  Finally, if the plaintiff had a

clearly established, constitutionally protected right that was violated, he or

she must demonstrate that it was not objectively reasonable for the

defendant to believe that his action did not violate such law.  *Harhay*, 323

F.3d at 211; *Poe*, 282 F.3d at 133 (quoting *Tierney v. Davidson*, 133 F.3d

189, 196 (2d Cir. 1998) (quoting, in turn, *Salim*, 93 F.3d at 89)).

24

The first two elements, as they apply to the facts of this case, are not controversial.  Addressing the merits of the plaintiff's free exercise and equal protection claims, I have found at least the existence of genuinely disputed material facts precluding a finding, as a matter of law, that no substantive violation occurred.  Moreover, the right at stake, including of a prison inmate to receive meals consonant with their religious beliefs, subject only to the constraints of legitimate penological concerns, was clearly established at the times in dispute.  *See*, *e.g.*, *Ford*, 352 F.3d at 507; *Bass*, 976 F.2d at 99; *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir. 1975).

It is the third element, addressing on Sergeant Guiffere's state of mind, that is the focus of his application for immunity from suit.  In this instance, Sergeant Guiffere asserts – and plaintiff does not contest – that it was his belief at the relevant times that the prescribed pork-free diet was in conformance with Johnson's Islamic dietary restrictions.  *See, e.g.,* Guiffere Aff. (Dkt. No. 33-3) ¶ 6.  Guiffere's belief in this regard was apparently influenced in large part by an advisory chart maintained at the MCJ reflecting that the dietary beliefs of the Islamic (Muslim) religion require consumption of Kosher meals, to include "meat, but no pork or

pork by-products."  Hutchinson Aff. (Dkt. No. 33) ¶ 5 and Exh. A.  It also

should be noted that at the time in question the provision of pork-free diets

to Islamic inmates had been approved by the New York courts as

"satisf[ying] the constitutional requirement."  *See Malik v. Coughlin,* 158

A.D.2d 833, 834, 551 N.Y.S.2d 418, 418 (3d Dep't 1990) (citing *O'Lone,*

482 U.S. at 352, 107 S. Ct. at 2406); *see also Majid v. Leonardo,* 172

A.D.2d 914, 914, 568 N.Y.S.2d 200, 201 (3d Dep't 1991).  Under these

circumstances I find that it was objectively reasonable for the defendant to

believe that his actions in denying plaintiff's request for a vegetarian-plus-

fish diet did not violate Johnson's clearly established constitutional rights.[11]

*See generally Kind v. Frank,* 329 F.3d 979 (8th Cir. 2003).

IV.    SUMMARY AND RECOMMENDATION

Analysis of plaintiff's substantive free exercise and equal protection

claims turn upon resolution by the factfinder of critical issues of fact,

---

[11]    Undeniably, the Second Circuit has been less than generous in finding qualified immunity in settings such as that now presented.  *See Ford,* 352 F.3d at 596-98.  In *Ford,* for example, the Second Circuit rejected a finding of qualified immunity based upon the failure of prison officials to provide an Islamic inmate with the Eid ul Fitr meal to celebrate the close of Ramadan, in reliance upon advice from religious authorities that postponement of the feast meal was not religiously significant.  *Id.* at 597-98.  The instant case, however, presents a far more compelling argument for invocation of qualified immunity, based upon facts which are strikingly similar to those involved in *Kind,* in which the Eighth Circuit endorsed a finding of qualified immunity under analogous circumstances to those now presented.  329 F.3d at 980-81.

including whether his sincerely held religious beliefs require the diet which he requested, and whether legitimate penological concerns preclude providing him with the meals sought by him.  I find, however, that a reasonable person in the defendant's circumstances, denying plaintiff's meal request based upon an established facility policy and a practice which has passed state court scrutiny, would not have appreciated that he or she was violating plaintiff's clearly established constitutional rights. Accordingly, I recommend a finding that defendant Guiffere is entitled to dismissal of plaintiff's claims against him on the ground of qualified immunity.

Based upon the foregoing, it is therefor hereby

RECOMMENDED that defendant's motion for summary judgment (Dkt. No. 62) be GRANTED, and the plaintiff's complaint be DISMISSED in all respects, with prejudice with respect to defendant Guiffere, but without prejudice as to defendant Pecora.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.

27

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the plaintiff by regular mail and the defendant electronically.

Dated:          August 10, 2007
                Syracuse, NY


David E. Peebles
U.S. Magistrate Judge

28